# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **DIANE HUGHES,** | : Case No. 1:22-CV-571 |
| | : |
| Plaintiff, | : Senior Judge Black |
| | : |
| v. | : |
| | : PLAINTIFF'S MOTION FOR |
| **BOARD OF EDUCATION OF THE** | : TEMPORARY RESTRAINING |
| **LAKOTA LOCAL SCHOOL DISTRICT,** *et al.*, | : ORDER /PRELIMINARY |
| | : INJUNCTION |
| Defendants. | : |

Now comes DIANE HUGHES and hereby moves this Court, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, for issuance of a temporary restraining order/preliminary injunction: (i) enjoining enforcement of the unconstitutional policy, practice, and custom of the BOARD OF EDUCATION OF THE LAKOTA LOCAL SCHOOL DISTRICT by which the BOARD OF EDUCATION and its president, LYNDA O'CONNOR, have denied DIANE HUGHES (and, possibly others) access to and participation in the public forum created and established for public comments during the course of public meetings of the BOARD OF EDUCATION; and (ii) directing the BOARD OF EDUCATION and its president, LYNDA O'CONNOR, to permit DIANE HUGHES and any other members of the general public access to said public forum at the forthcoming and all future meetings of the BOARD OF EDUCATION when the subject matter of such comments concern "educational issues" and "school matters of community interest", including comments containing criticism, by name, of public employees or public officials of the Lakota School District, including the School District's superintendent. If injunctive relief is not immediately issued, DIANE HUGHES and others will suffer irreparable harm for which there is no adequate remedy at law. DIANE HUGHES further requests that the

requirement to give security pursuant to Fed. R. Civ. Proc. 65(c) be waived as this case is undertaken to protect and vindicate Plaintiff's First Amendment rights.

In addition to the following *Memorandum in Support*, this *Motion* is supported by the *Verified Complaint & Exhibit A* (Doc. Nos. 1 & 1-1, PageID#1-26).

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION**

Plaintiff DIANE HUGHES initiated this civil rights action with the filing of the *Verified Complaint & Exhibit A* (Doc. Nos. 1 & 1-1, PageID#1-26) challenging the unconstitutional policies, practices, and customs of the BOARD OF EDUCATION OF THE LAKOTA LOCAL SCHOOL DISTRICT and the unconstitutional actions of LYNDA O'CONNOR, president of the BOARD OF EDUCATION, whereby DIANE HUGHES (and potentially others) were denied and will continue to be denied access to the public forum for public participation during the course of meetings of the BOARD OF EDUCATION because the content and/or viewpoint of the desired comments they which to make which are critical of the superintendent of the Lakota Local School District.

During and as part of a public participation portion of a recent meeting of the BOARD OF EDUCATION held on September 12, 2022, DIANE HUGHES sought to address a recently filed complaint against the School District's superintendent and to specifically call for the termination of the superintendent. *See Verified Complaint ¶¶36-38* (Doc. No. 1, PageID#9-11). However, when Mrs. HUGHES sought to make such comments, LYNDA O'CONNOR immediately interrupted and ultimately denied Mrs. HUGHES full and robust access to such forum because of the content and/or viewpoint of the intended speech of Mrs. HUGHES, notwithstanding that the members of the BOARD OF EDCUATION met in an executive session during that same meeting

believed to be for consideration of the same complaint against the School District's superintendent, as well as LYNDA O'CONNOR publicly reading a statement "from the Board" regarding such complaint at the same meeting. *See Verified Complaint ¶¶15-18 & 38-39* (Doc. No. 1, PageID#4-5 & 10-11). And notwithstanding prohibiting the specific comments of DIANE HUGHES which were critical of a school official, the BOARD OF EDCUATION and LYNDA O'CONNOR regularly and readily accept and allow comments during the public comment portion of meetings that praise any public employee or public official of the School District. *See Verified Complaint ¶¶40-54* (Doc. No. 1, PageID#11-18).

As such action clearly violates the rights afforded to DIANE HUGHES and others under the First Amendment, as well as to ensure equal protection of the law, DIANE HUGHES requests the immediate issuance of a preliminary injunction directing the BOARD OF EDUCATION and LYNDA O'CONNOR to allow her and others to participate in the public participation portion of the meetings of the BOARD OF EDUCATION at its next meeting and at all future meetings of the BOARD OF EDUCATION and to specifically allow public comments explicitly critical of and concerning the School District's superintendent.

## II. FACTS

On August 22, 2022, the BOARD OF EDUCATION OF THE LAKOTA LOCAL SCHOOL DISTRICT received a written complaint from a resident and taxpayer of the school district concerning alleged conduct of the School District's superintendent. *Verified Complaint ¶13* (Doc. No. 1, PageID#4).. The subject of this complaint subsequently came up during the course of the regular meeting of the BOARD OF EDUCATION on September 12, 2022.

Initially, at the outset of the beginning of the meeting held on September 12, 2022, the members of the BOARD OF EDUCATION convened in an executive session for over 90 minutes under the claimed auspices or authority "to consider the employment of a public employee, and to conference with legal counsel concerning disputes that are the subject of pending or imminent court action." *Verified Complaint ¶15* (Doc. No. 1, PageID#4). Based upon information and belief, the discussions in the executive session involved or included the complaint concerning the School District's superintendent received on August 22, 2022. *Verified Complaint ¶16* (Doc. No. 1, PageID#5).

And then, during the public session of the meeting held on September 12, 2022, LYNDA O'CONNOR made the following public statement "from the Board" regarding the complaint concerning the School District's superintendent:

> I have a statement from the Board that I'd like to share.
>
> On August 22, 2022, the Board of Education received a complaint from a member of the community regarding Superintendent Matt Miller. The materials submitted to the Board did not contain any direct evidence of misconduct or that Mr. Miller presented a threat to students or to staff. Moreover, the complaint stated that this issue had already been submitted to law enforcement.
>
> Because there were no credible allegations against Mr. Miller, the Board waited for law enforcement to complete their investigation. On Friday, September 9, at the end of the workday, the Board of Education received notice that the Butler County Sheriff's Office completed an investigation regarding the superintendent. The Sheriff's Office determined that there was no probable cause to initiative criminal charges.
>
> To date, the Board has not received any credible evidence of wrongdoing. However, in order to execute due diligence and with the support of the superintendent, a neutral party with no ties to Lakota has begun a review of the facts to confirm that the superintendent is not a threat to students or to staff.
>
> The Board will make no additional comments regarding the complaint until after the investigation is concluded.

*Verified Complaint ¶17* (Doc. No. 1, PageID#5). And, after LYNDA O'CONNOR made the foregoing statement, three of the other members of the BOARD OF EDUCATION publicly stated

- 4 -

their assent or agreement with the statement. *Verified Complaint ¶¶19-27* (Doc. No. 1, PageID#6-7).

Pursuant to its *Policy No. 0169.1*, the BOARD OF EDUCATION declares that it "recognizes the value to school governance of public comment on educational issues and the importance of allowing members of the public to express themselves on school matters of community interest." *Verified Complaint ¶30 & Exhibit A* (Doc. Nos. 1 & 1-1, PageID#8 & 25-26). And, thus, also pursuant to *Policy No. 0169.1*, the BOARD OF EDCUATION provides "a period for public participation at every regular and special meeting of the Board." *Verified Complaint ¶32 & Exhibit A* (Doc. No. 1 & 1-1, PageID#8 & 25-26).

But when DIANE HUGHES sought access to the public participation portion of the meeting of the BOARD OF EDUCATION on September 12, 2022, LYNDA O'CONNOR prevented her from offering comments that were specifically critical of the School District's superintendent. The following exchange occurred:

> DIANE HUGHES: …. My children are grown, so I am here to advocate for someone else's child and for our community at large. As a self-proclaimed public figure, the superintendent of Lakota should be fired because he has admitted to fantasizing about drugging, molesting –
>
> LYNDA O'CONNOR: Mrs. Hughes.
>
> DIANE HUGHES: [inaudible] sexual abuse –
>
> LYNDA O'CONNOR: Mrs. Hughes.
>
> DIANE HUGHES: of children.
>
> LYNDA O'CONNOR: Mrs. Hughes. Mrs. Hughes, I'm going to ask you to refrain from talking about specific employees, but happy to listen to your concerns, otherwise.
>
> DIANE HUGHES: I won't talk about a specific employee –
>
> LYNDA O'CONNOR: Thank you
>
> DIANE HUGHES: – anymore. Whether this behavior gets followed through or not is irrelevant. Simply having such thoughts disqualifies anyone from having any job that even remotely has to do with children. In case you aren't aware, pedophiles and child abusers commonly chose career paths –

> LYNDA O'CONNOR: Mrs. –
>
> DIANE HUGHES: Its public comment. I am not talking –
>
> LYNDA O'CONNOR: Mrs. Hughes
>
> DIANE HUGHES: – about anyone. I'm making a public – this is about child safety and I'm making a comment.
>
> …
>
> DIANE HUGHES: They chose career paths –
>
> LYNDA O'CONNOR: Mrs. Hughes –
>
> DIANE HUGHES: That put that them –
>
> LYNDA O'CONNOR: This is not a part of our agenda.
>
> DIANE HUGHES: [inaudible] minors
>
> LYNDA O'CONNOR: Thank you for sharing with you. I'm going to ask you to sit down, please. Please. Just to sit down, not to be removed. Thank you.
>
> DIANE HUGHES: I think that you have said what –
>
> LYNDA O'CONNOR: Thank you. Thank you, ma'am.

*Verified Complaint ¶38* (Doc. No. 1, PageID#10-11).

Thus, as a result of the policy, practice, and custom of the BOARD OF EDUCTION, as well as the unconstitutional actions of LYNDA O'CONNOR, DIANE HUGHES was denied access and will continue to be denied access to the public forum of the public participation portion of meetings of the BOARD OF EDUCATION based upon the viewpoint and/or content of her desired comments, even though such comments concern "educational issues" and "school matters of community interest consistent with *Policy No. 0169.1*. Thus, in order to vindicate her First Amendment rights, as well as to ensure equal protection of law, Mrs. HUGHES commenced this civil rights action pursuant to 42 U.S.C. § 1983, seeking, *inter alia*, the issuance of a preliminary injunction.

## III. ARGUMENTS

This matter is currently before the Court on the request for a preliminary injunction. As is well-established, in determining whether to grant such relief, the Court is to consider four factors:

(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of a preliminary injunction. *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997)(*en banc*)(quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). Additionally, these factors should be balanced against one another and should not be considered prerequisites to the granting of preliminary injunction. *See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). However, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)(quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)); *accord Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

> **A. Plaintiff has a strong likelihood of success on the merits as the denial of access to the public forum of the public participation portion of the meetings of the BOARD OF EDUCATION OF THE LAKOTA LOCAL SCHOOL DISTRICT is in violation of the First Amendment.**

Mrs. HUGHES' strong likelihood of prevailing on the merits in this action is attributable to the actions of LYNDA O'CONNOR in directly implementing a policy, practice, or custom of the BOARD OF EDUCATION to prohibit any public comment that is critical of public employees or officials, in general, and the School District's superintendent, in particular. In analyzing the constitutional protections that are accorded free speech rights in the context of public fora, courts ordinarily use a three-step analysis. These steps are (1) a determination of whether the speech is protected speech, (2) a determination of the nature of the forum in which the speech would be presented, and (3) an analysis of whether the justification presented by the government satisfies

the relevant standard. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

### *(1) The speech at issue – criticism of a public school superintendent – is protected by the First Amendment as core political speech.*

The speech at issue herein – relating to alleged conduct of the superintendent of a public school and criticism arising therefrom – clearly concerns speech protected by the First Amendment. As the Ninth Circuit has recognized, "[c]itizens have an enormous First Amendment interest in directing speech about public issues to those who govern [their local governmental entities]." *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990); *see Pickering v. Board of Ed.*, 391 U.S. 563, 569-75 (1968)(extending First Amendment protection to teacher's criticism of Board of Education and superintendent of schools concerning school budgeting); *see also* R.C. 3319.01 ("superintendent [of a local school district] shall be the executive officer for the board"). Additionally, "a public comment period – designated for citizens to exchange political ideas – though somewhat more limited than the archetypical public fora of streets and parks, implicates core first amendment concerns." *Mitchell v. Hillsborough County*, 468 F.3d 1276, 1286 n.25 (11th Cir. 2006). Thus, it should be beyond cavil that comments, both positive and negative, directed towards the qualifications *vel non* and continued employment *vel non* of a public school superintendent are clearly matters at the heart or core of First Amendment protection.

### *(2) The subject forum – the public comment portion of the meeting of a public body– is either a designated public forum or a limited public forum.*

This Court's analysis under the First Amendment must next include an assessment of the type of forum at issue. "Forum analysis requires a court first to categorize a location (or forum) to which a speaker seeks access for the purpose of expressive activity, and then to analyze the government's restriction on speech against the constitutional standard that governs in that forum."

*Brindley v. City of Memphis, Tenn.*, 934 F.3d 461, 467 (6th Cir. 2019)(quoting *Agema v. City of Allegan,* 826 F.3d 326, 335 (6th Cir. 2016)(Merritt, J., dissenting in part)).

This process arises out of the Supreme Court's efforts to address the recurring and challenging issue of the right the First Amendment gives to individuals and groups to engage in speech on government property or facilities. *Cornelius*, 473 U.S. at 815 (Blackmun, J., dissenting). The result of this analysis will determine the extent to which the government may limit access to those spaces specifically hinges on whether the forum is public or non-public. *Putnam Pit, Inc. v. City of Cookeville, Tennessee*, 221 F.3d 834, 842 (6th Cir. 2000). The Sixth Circuit has acknowledged four types of fora: (1) the traditional public forum, (2) the designated public forum, (3) the limited public forum, and (4) the nonpublic forum. *Miller v. City of Cincinnati,* 622 F.3d 524, 534-36 (6th Cir. 2010).

Traditional public fora include public streets, parks, and other public areas traditionally devoted to assembly and debate. *See Arkansas Ed. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998). "The government creates a designated public forum when it opens a piece of public property to the public at large, treating as if it were a traditional public forum." *Miller*, 622 F.3d at 534; *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 679 n.11 (2010). The ability of the government to limit speech in a traditional or designated public forum is sharply circumscribed.

In such fora, content-based regulation is justified only when "necessary to serve a compelling state interest and [when] it is narrowly drawn to achieve that end." *Perry,* 460 U.S. at 45. Content-neutral restrictions in traditional or designated public fora that regulate the time, place, and manner of speech are permissible so long as they are "narrowly tailored to serve a significant government interest, and [they] leave open ample alternative channels of communication." *Id.* The

First Amendment prohibits restrictions based on a speaker's viewpoint in both types of forums. [1] *See Pleasant Grove City v. Summum*, 555 U.S. 460, 469reate (2009).

In contrast to traditional and designated public forums, "[a] government entity may 'create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects.'" *Miller*, 622 F.3d at 534-35 (quoting *Summum,* 555 U.S. at 470). In a limited public forum, the governmental body may restrict speech "as long as the restrictions do 'not discriminate against speech on the basis of viewpoint' and are 'reasonable in light of the purpose served by the forum.'" *Miller*, 622 F.3d at 535 (quoting *Good News Club v. Milford Central Sch.,* 533 U.S. 98, 106-07 (2001)).

There has been some divergence between courts of whether the public comment portion of meetings of local governmental bodies should constitute designated public fora or limited public fora. *Compare, e.g., Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011)("[t]here is no doubt that audience time during [local governmental] meetings constituted a designated public forum") *and Jones v. Heyman,* 888 F.2d 1328, 1331 (11th Cir. 1989)("the city commission designated their meeting a public forum when the commission intentionally opened it to the public and permitted public discourse on agenda items") *and Mesa v. White*, 197 F.3d 1041, 1045 (10th Cir. 1999)("the Commission designated the February 16, 1996 meeting a public forum when the Commission intentionally opened it to the public. Thus, by creating this forum, the Commission became bound by the same standards that apply in the case of a traditional public forum") *with Fairchild v. Liberty Independent School Dist.*, 597 F.3d 747, 759 (5th Cir. 2010)("[t]he Board meeting here – and the

---

[1] Generally, "discrimination against one set of views or ideas is but a subset or particular instance of the more general phenomenon of content discrimination. And, it must be acknowledged, the distinction is not a precise one." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 831(1995).

comment session in particular – is a limited public forum") *with Shero v. City of Grove, Oklahoma*, 510 F.3d 1196, 1202 (10th Cir. 2007)("it is not entirely clear whether a city council meeting should be treated as a 'designated public forum' or a 'limited public forum'"). And the Sixth Circuit has described the public participation portion of meetings of a governmental body to being a mix of a designated public forum and a limited public forum: meetings of governmental bodies "cannot accommodate the sort of uninhibited, unstructured speech that characterizes a public park. That is why courts call this sort of forum a 'designated' and 'limited' public forum: 'designated' because the government has 'intentionally open[ed]' it 'for public discourse,' and 'limited' because 'the State is not required to ... allow persons to engage in every type of speech' in the forum.'" *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 519 (6th Cir. 2019)(quoting *Lowery v. Jefferson Cty. Bd. of Ed.*, 586 F.3d 427, 432 (6th Cir. 2009)). Nonetheless, in *Teufel v. Princeton City Sch. Dist. Bd. of Ed.*, Case No. 1:12-cv-355, 2013 U.S. Dist. LEXIS 4923 (S.D. Ohio Jan. 11, 2013)(Black, J.), this Court concluded that the public comment period of a school board to be a limited public forum. *Id.*, at *29 ("the type of public participation session before the Board of Education is considered a limited public forum"). And even considering the public participation portion of a meeting under the limited-forum analysis, the absolute prohibition on comments directed to and critical specifically identified officials of the Lakota Local School District cannot and do not survive constitutional muster.[2]

---

[2] As noted above, a viewpoint-based restriction on speech even in a limited public forum is not constitutionally permissible. And considering that the BOARD OF EDUCATION has created a public forum for matters related to "educational issues" and "school matters of community interest", to selectively chose or isolate certain educational-related matters as outside the forum is also a form of viewpoint discrimination on core political speech, not simply a content restriction. *See Travis v. Owego-Apalachin School Dist.*, 927 F.2d 688, 692 (2nd Cir. 1991)(in a limited public forum, "once [government] allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre"). Furthermore, considering the comments at prior meetings advocating a point of view positive towards the School District's superintendent (in

### (3) The prohibition against criticizing public officials even in a limited public forum does not survive constitutional scrutiny.

"Once it has opened a limited forum, …the State must respect the lawful boundaries it has itself set." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). "When the government creates a limited public forum[,]… the government 'may not exclude speech' if doing so 'is not reasonable in light of the purpose served by the forum' or is based on 'viewpoint'." *Fiedor v. Florida Department of Financial Services*, 440 F.Supp.3d 1303, 1313 (N.D. Fla. 2020)(quoting *Christian Legal Soc'ty*, 561 U.S. at 685 (quoting *Rosenberger*, 515 U.S. at 829).

Thus, "[i]n a limited public forum, the government can impose reasonable restrictions based on speech content, but it cannot engage in viewpoint discrimination." *Youkhanna*, 934 F.3d at 519. Accordingly, "[a] limitation on the subjects to be discussed at a limited public forum to only those subjects that fall under the purview of the government entity overseeing said forum is a plainly reasonable restriction." *Judson v. Board of Supervisors of Mathews County, Va.*, 436 F.Supp.3d 852, 868 (E.D. Va. 2020). But "[c]ontent discrimination, *even* in a limited public forum, must be reasonable in light of the purposes of the forum to be constitutionally permitted." *Bronx Household of Faith v. Board of Ed. of City of New York*, 492 F.3d 89, 104 (2d Cir. 2007); *accord Good News Club*, 533 U.S. at 106-07 (in the context of evaluating a restriction on speech in a limited public forum, the reasonableness of the restriction must be considered "in light of the purpose served by the forum").

With respect to the BOARD OF EDUCATION OF THE LAKOTA LOCAL SCHOOL DISTRICT, the purpose of the forum created and established for public comments as part of its meetings is very broad and generally unlimited. In fact, pursuant to *Policy No. 0169.1,* the

---

contrast to Mrs. HUGHES' desire to criticize) further indicate such efforts were targeted towards certain viewpoints. *See, e.g., Verified Complaint ¶¶40-54* (Doc. No. 1, PageID#11-18).

BOARD OF EDUCATION declared that it "recognizes the value to school governance of public comment on educational issues and the importance of allowing members of the public to express themselves on school matters of community interest." Thus, the public forum at issue is not narrowly circumscribed; instead, it is the opposite.

But the subjects now apparently decreed verboten, *i.e.,* the recently-filed complaint against the School District's superintendent and criticism arising therefrom, are indisputably within the genre or scope of the for a that is the public participation portion of the meetings of BOARD OF EDUCATION and within the scope of *Policy No. 0169.1*. In fact, in *Teufel v. Princeton City Sch. Dist. Bd. of Ed.*, Case No. 1:12-cv-355, 2013 U.S. Dist. LEXIS 4923 (S.D. Ohio Jan. 11, 2013), this Court reviewed similar censorship by a board of education that sought to preclude public comment critical of school officials. In that case, this Court clearly and unequivocally recognized that the school board "may not exclude speech merely because it criticizes school officials." *Id.*, at *35; *accord Ison v. Madison Local School Dist. Bd. of Ed.*, 3 F.4th 887, 894 (6th Cir. 2021)("the government may not censor speech merely because it is 'offensive to some'" (quoting *Matal v. Tam*, 582 U.S. __, __, 137 S. Ct. 1744, 1763 (2017)(quoting *Street v. New York*, 394 U.S. 576, 592 (1969))); *id.* at 895 ("to 'exclude speech merely because it criticizes school officials,' would constitute viewpoint discrimination" (quoting *Lowery v. Jefferson Cty. Bd. of Ed.*, 586 F.3d 427, 435 (6th Cir. 2009)).³ Thus, regardless of whether the effort to stiffly Mrs. HUGHES is considered

---

³ If one considers that the public forum created by the BOARD OF EDUCATION actually allows for public comment on the policies, decisions, affairs, *etc.*, of the BOARD, then to preclude a comment only on certain or specific policies, decisions, affairs, *etc.*, actually constitutes a viewpoint-based discrimination on access to the public forum. *See InterVarsity Christian Fellowship/USA v. University of Iowa*, 408 F.Supp.3d 960, 979 (S.D. Iowa 2019) ("[w]hen a regulation governs what speech is permitted in a limited public forum – and thus establishes the forum's limitations – the disparate application of that regulation can constitute viewpoint discrimination"). And, as noted above, "[e]ven in a limited public forum such as a school board

to be a viewpoint-based or a content-based discrimination upon core political speech, the comments that Mrs. HUGHES was denied the opportunity to make cannot withstand constitutional muster.

In this case, the same analysis and conclusion as is *Teufel* is application. The policies of the BOARD OF EDUCATION and the actions of LYNDA O'CONNOR in denying Mrs. HUGHES fully and uninhibited access to the forum for public comments during a meeting of the BOARD about matters directly concerning the School District is not consistent with the broad and unlimited nature of the forum, let alone that the subject matter concerning positions, policies, and actions specifically taken (or not taken) by the BOARD OF EDUCATION; instead, they are either a viewpoint-based prohibition on core political speech and/or a content-based prohibition on core political speech that is not reasonable in light of the nature of the forum. As such, regardless of the type of forum involved and the type of speech-discrimination at issue, such actions lack any justification and clearly are violative of the Constitution. At a minimum, at this stage of the proceedings, DIANE HUGHES has demonstrated a strong likelihood of success on her claims and neither the BOARD OF EDCUATION nor LYNDA O'CONNOR can satisfy their burden of constitutionally justifying the presently-imposed restrictions on the public participation portion of meetings of the BOARD OF EDUCATION.

> **B. Plaintiff Will Suffer Irreparable Injury if the Board of Education and its Presiding Officer are not Immediately Enjoined from Enforcing Prohibition on Presentation Of Plaintiff's Speech in the Subject Fora.**

As indicated on the website of the Lakota Local School District, the next regular meeting of the BOARD OF EDUCATION is scheduled for October 10, 2022. *Verified Complaint ¶60*

---

meeting, the Government may not discriminate on the basis of viewpoint." *Monroe v. Houston Independent School District*, 419 F.Supp.3d 1000, 1007 (S.D. Tex. 2019).

(Doc. No. 1, PageID#19). And Mrs. HUGHES desires to be able to participate in the public participation portion of that meeting, *i.e.*, to have access to forum created and designated by the BOARD OF EDUCATION, and to specifically address, by name, officials with the School District. *Verified Complaint ¶61* (Doc. No. 1, PageID#19.) However, in light of the past actions by LYNDA O'CONNOR, and the stifling of such comments against Mrs. HIGHES at the meeting of September 12, 2022, Mrs. HUGHES reasonably anticipates that her desired access to the forum and the ability to engage fully and robustly in core political speech at the forthcoming meeting will be outright denied. *Verified Complaint ¶62* (Doc. No. 1, PageID#19-20.) The policy and actions of the BOARD OF EDUCATION and LYNDA O'CONNOR are clearly contrary to the Constitution and, to ensure such unconstitutional actions do not occur, immediate intervention of the Court is necessary.

Even a temporary deprivation of First Amendment freedom of expression rights is generally sufficient to prove irreparable harm. *National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990). Thus, as noted above, satisfaction of the first prong of the preliminary injunction standard – demonstrating a strong likelihood of success on the merits –also satisfies the irreparable injury standard. *See Elrod v. Burns*, 427 U.S. 347, 373 (1973) (holding that if a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated); *Connection Distributing*, 154 F.3d at 288 (finding that "when a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor"). Thus, DIANE HUGHES and others will suffer irreparable injury if the Defendants are not immediately enjoined from enforcing their unconstitutional policy.

**C. The BOARD OF EDUCATION will not suffer harm and the public interest will be served if a temporary restraining order/preliminary injunction is issued enjoining it from enforcing its unconstitutional policy against Plaintiff.**

The BOARD OF EDUCATION will not suffer any harm if it is enjoined from enforcing its unconstitutional policy against Plaintiff and others. The unconstitutional character of this prohibition leaves the BOARD with no legitimate interest in its continued application. Furthermore, the operations of the Lakota Local School District and the meeting of the BOARD OF EDUCATION are not threatened. All that Mrs. HUGHES desires and is entitled to is the same right afforded to any other resident during the public participation portion of the meetings – to address for those issues of concern to her which may include criticism of the current policies, decisions, or actions of the School District's superintendent. It is in the public interest to enjoin the policy that effectively stifles criticism of any public official and, instead, to protect and maximize the political speech and dissemination of discussion on issues of public concern. *See G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("it is always in the public interest to prevent the violation of a party's constitutional rights").

## IV. CONCLUSION

"[P]ublic criticism of governmental policy, government operations, and government officials 'is at the very core of the constitutionally protected free speech area'." *Bradley v. Computer Sciences Corp.*, 643 F.2d 1029, 1033 (4th Cir. 1981)(quoting *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342 (7th Cir. 1977)). "The arena of political discourse can at times be rough and tough. Public officials must expect that their decisions will be subjected to withering scrutiny from the populace. A public official's response to that criticism is subject to limits…. Without that limitation, the Constitution would change from the guarantor of free speech to the silencer of public debate." *Zherka v. Amicone*, 634 F.3d 642, 647 (2d Cir. 2011).

"Public officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views." *Mattox v. City of Forest Park*, 183 F.3d 515, 522 (6th Cir. 1999). Selectively closing down a public forum so as to stifle criticism of such officials is not consistent with the First Amendment. Public comments in such a public forum must be allowed as they are consistent with the purpose and genre of the forum and no constitutional justification exists to selective restrict such criticism of public officials.

Accordingly, the requested temporary restraining order/preliminary injunction should issue forthwith.

Respectfully submitted,

*/s/ Curt C. Hartman*
Curt C. Hartman
THE LAW FIRM OF CURT C. HARTMAN
7394 Ridgepoint Drive, Suite 8
Cincinnati, Ohio   45230
(513) 379-2923
*hartmanlawfirm@fuse.net*

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing will be served upon Brodi Connover (BConover@bricker.com), counsel for Lakota School Board on the date of filing.

*/s/ Curt C. Hartman*